UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as liquidating agent for the NEW LONDON SECURITY FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO ADVISORS, LLC, as successor in interest to WACHOVIA SECURITIES, successor in interest to A.G. EDWARDS & SONS, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:10CV143 WWE<br><br>3 10CV00143 WWE<br><br>JANUARY 29, 2010 |

## COMPLAINT

Plaintiff National Credit Union Administration Board, in its capacity as liquidating agent for the New London Security Federal Credit Union, ("the Liquidating Agent" or "Plaintiff"), states as follows for its complaint against defendant Wells Fargo Advisors, LLC ("Defendant" or "Wells Fargo").

## NATURE OF ACTION

This is an action for damages arising out of the actions, inactions, and negligence of the Defendant, a security and investment brokerage entity, and its agent with respect to the investments of the New London Security Federal Credit Union (the "Credit Union"). Defendant's negligence and representations, and the representations of its agent, resulted in the Credit Union becoming insolvent and being placed into liquidation. Because the Credit Union became insolvent and was liquidated, the member investors in the Credit Union, whose

investments in the Credit Union were insured, had claims against the Liquidating Agent for the amounts of their investments. As a result, the Liquidating Agent was forced to pay out substantial sums to the member investors for the insured investments, and remains potentially liable, as the Liquidating Agent for the insolvent estate, for future payouts for uninsured claims. The payments made by the Liquidating Agent came from the National Credit Union Share Insurance Fund ("NCUSIF"), which is administered by the National Credit Union Administration ("NCUA"). The NCUSIF has hence subrogated to the rights of the member investors. Therefore, as a result of Defendant's negligence and representations, the Liquidating Agent has become indebted to the NCUSIF for the amounts paid out thus far to member investors, and will remain liable for any potential future claims.

## THE PARTIES

1. The Liquidating Agent is Plaintiff in this action pursuant to 12 U.S.C. §§ 1787(a)(1)(A), 1787(b)(2)(A)(i) *et seq*. The NCUA is the independent federal agency that charters and supervises federal credit unions and administers the NCUSIF. The New London Security Federal Credit Union was chartered as a Federal credit union in 1936, and was located in New London, Connecticut.

2. Upon information and belief, Defendant Wells Fargo is a Delaware corporation with its principal place of business in St. Louis, Missouri, and which does business in the State of Connecticut. Defendant Wells Fargo is a subsidiary of Wells Fargo & Company, which has its principal place of business in San Francisco, California, and is the successor-in-interest to Wachovia Securities ("Wachovia") and A.G. Edwards and Sons, Inc. ("A.G. Edwards").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 12 U.S.C. § 1789(a)(2) because Plaintiff is liquidating agent for the Credit Union, and 28 U.S.C. § 1345 because Plaintiff is an independent federal agency.

4. The District of Connecticut is the proper venue for this proceeding, pursuant to 12 U.S.C. § 1789(a)(2), and 28 U.S.C. § 1391, because Defendant has offices and transacts business in this district and substantial parts of the events giving rise to the Complaint occurred in this district.

## STATEMENT OF FACTS

5. Edwin Rachleff ("Mr. Rachleff") worked as an investment broker and financial advisor for A.G. Edwards from on or about February 1988, and subsequently for Wachovia following the merger between the two companies, until his suicide in July 28, 2008. Upon information and belief, Mr. Rachleff served as the branch manager of A.G. Edwards' local branch office in Waterford, Connecticut.

6. In or about March 1988, Mr. Rachleff, as an investment broker and financial advisor of A.G. Edwards, represented to the Credit Union that he was opening account ▮▮▮ at A.G. Edwards with Credit Union funds on behalf of the Credit Union.

7. A.G. Edwards' agent, Mr. Rachleff, represented to the Credit Union on April 29, 1988, that its investment at A.G. Edwards was valued at over $4,832,000.00.

8. As A.G. Edwards' agent, Mr. Rachleff provided the Credit Union, from time to time, with investment account statements, trade confirmations, and other account verification documentation.

9. All investment account statements received by the Credit Union from A.G. Edwards were on brokerage statements with A.G. Edwards letterhead, contained account ███████████ and listed the Credit Union as the named account owner.

10. Between April 1988 and June 2008, the Credit Union received monthly account statements from A.G. Edwards detailing its investments, including the value of its investments and details of its investment portfolio.

11. Between April 1988 and June 2008, the Credit Union received trade confirmations on A.G. Edwards' letterhead detailing transactions taken on its behalf.

12. In addition to the account balance represented on the April 1988 statement for the investment account, the Credit Union deposited checks totaling over $1,755,000.00 into account ███████████ at A.G. Edwards between April 1988 and July 2003. Those checks bore the Credit Union's name, were made payable to A.G. Edwards, and referenced account ███████████ The amounts in said checks were deposited into, and credited to the A.G. Edwards account provided to the Credit Union by A.G. Edwards' agent, Mr. Rachleff, account ███████████

13. In the April/May 2005 investment account statement received by the Credit Union, A.G. Edwards informed the Credit Union that account ███████████ was being changed to a new account number, account ███████████ as a result of a technology upgrade.

14. The June 2008 investment account statement for account ███████████, formerly account ███████████, with the Credit Union's name, showed a total investment balance of over $11,818,000.00.

15. In or about July 2008, it was discovered that the investment account in the name of the Credit Union was non-existent at Wachovia (formerly A.G. Edwards).

16. The missing investment assets caused the Credit Union to become insolvent and, on July 28, 2008, the NCUA Board had to place the Credit Union into involuntary liquidation.

17. Unbeknownst to the Credit Union, and contrary to his representations to the Credit Union, Mr. Rachleff had not opened account ███████████ at A.G. Edwards under the Credit Union's name. Instead, Mr. Rachleff opened account ███████████ under the name of Elmore Shoe Company, which, upon information and belief, was a defunct company formerly owned by Mr. Rachleff's wife and family.

18. Upon information and belief, Mr. Rachleff, as an investment broker at A.G. Edwards with access to all necessary A.G. Edwards documents, created account ███████████ using fraudulent information and the Credit Union's funds. Specifically, Mr. Rachleff:

> a. had relatives and acquaintances sign the A.G. Edwards forms and documents in relation to account ███████████
>
> b. used misleading physical addresses for the account;
>
> c. used a misleading tax identification number for the account;
>
> d. used the name Elmore Shoe Company as the named account holder; and
>
> e. used Credit Union funds in the Elmore Shoe Company account without the authority of the Credit union.

19. Mr. Rachleff had complete control over account ███████████ and subsequently account ███████████ and performed transactions on the account, including taking significant withdrawals that were not on behalf of the Credit Union.

20. Mr. Rachleff, however, used brokerage statements with A.G. Edwards letterhead at his disposal to fabricate falsified investment account statements that he then provided to the Credit Union on behalf of A.G. Edwards.

21. As previously noted, the Credit Union also received trade confirmations of transactions on behalf of the Credit Union in account ▇▇▇▇ and subsequently account ▇▇▇▇ from A.G. Edwards' agent, Mr. Rachleff. However, none of these transactions were genuine.

22. Mr. Rachleff continued this practice from 1988 until July 2008, when the fraud was uncovered and Mr. Rachleff committed suicide.

23. At no time prior to July 2008 did Defendant Wells Fargo, formerly Wachovia and formerly A.G. Edwards, notify the Credit Union that account ▇▇▇▇ and subsequently account ▇▇▇▇ did not belong to the Credit Union.

## COUNT I – NEGLIGENT SUPERVISION

24. The Liquidating Agent incorporates by reference the allegations previously set forth in this Complaint as if set forth fully herein.

25. Defendant Wells Fargo (formerly Wachovia, and formerly A.G. Edwards) had a duty to supervise its employee, Mr. Rachleff, who was an investment broker at the branch office of A.G. Edwards (subsequently Wachovia).

26. Defendant knew or should have known that Mr. Rachleff had access to blank brokerage statements bearing A.G. Edwards letterhead.

27. Mr. Rachleff, as an investment broker and agent of A.G. Edwards, had the ability and the means to open investment accounts at A.G. Edwards on behalf of clients.

28. Defendant knew or should have known that, absent proper supervision, Mr. Rachleff, as an investment broker and agent of A.G. Edwards, would have the necessary facilities and the opportunity to create a fraudulent account.

29. Defendant failed to properly supervise Mr. Rachleff. Defendant lacked the proper procedures to supervise Mr. Rachleff, or otherwise failed to adhere to reasonable internal procedures in place in supervising Mr. Rachleff.

30. Defendant failed to properly supervise Mr. Rachleff in the opening of account ▆▆▆▆▆▆▆, and was negligent in supervising the handling and management of account ▆▆▆▆▆▆▆ and subsequently account ▆▆▆▆▆▆▆

31. As a result of Defendant's negligent supervision, Mr. Rachleff was able to, and did, create and perpetuate a fraudulent account for the Credit Union.

32. Defendant's negligence led the Credit Union to lose the gains it reasonably expected to have realized from its investments over a period of two decades based on Mr. Rachleff and A.G. Edwards' conduct.

33. As a result of Defendant's negligence, the Credit Union became insolvent because it was discovered that it did not actually have the investment amounts it was led to believe existed for its member investors. As a result of the Credit Union's insolvency, member investors in the Credit Union have been paid out $9.7 million from the NCUSIF to date for their insured investments.

34. Accordingly, as a result of such payments for insured investments caused by Defendant's negligence, the Liquidating Agent has become liable to the NCUSIF for all amounts paid out to the member investors, and has therefore been damaged. The Liquidating Agent also remains potentially exposed to liability for substantial additional sums stemming

from claims for the uninsured investments of member investors who may have claims against the insolvent estate.

## COUNT II – PROMISSORY ESTOPPEL

35. The Liquidating Agent incorporates by reference the allegations previously set forth in this Complaint as if set forth fully herein.

36. At all times between February 1988 and July 2008, Defendant held out Mr. Rachleff as an agent and as an investment broker with sufficient authority to open investment accounts, and handle such accounts, on behalf of Defendant for the benefit of the Credit Union and other clients.

37. At all times between February 1988 and July 2008, Defendant permitted Mr. Rachleff to act as having such authority.

38. As such, the Credit Union reasonably believed that Mr. Rachleff had the necessary authority to perform the aforesaid transactions and to bind Defendant.

39. On behalf of A.G. Edwards, Mr. Rachleff represented to the Credit Union that he would open an investment account on behalf of the Credit Union, that the account would, at all times, belong to the Credit Union, and that the Credit Union's investments would be placed into that account and invested through an investment portfolio.

40. Relying on Mr. Rachleff's representations, the Credit Union made the aforementioned deposits into, and investments with, A.G. Edwards.

41. Further relying on the investment account statements that it received on a monthly basis on A.G. Edwards letterhead, the Credit Union continued to make deposits into the account from April 1988 through July 2003, believing that the account was genuine and that the statements were an accurate representation of its investments and assets.

42. Relying on the A.G. Edwards investment account statements, the Credit Union believed that its investments were growing over the course of two decades, per its expectations.

43. Based on its reliance on the falsified A.G. Edwards investment account statements it received, the Credit Union further assured its member investors that they were entitled to, and possessed, certain specific investment balances in their own accounts. Furthermore, based on the A.G. Edwards investment account statements, which evidenced on their face additional assets, the Credit Union, in turn, reported and posted dividends on the members' accounts.

44. The Credit Union would not have made such assurances nor paid such dividends to its member investors absent the promises and representations by Mr. Rachleff, A.G. Edwards, and the A.G. Edwards investment account statements that the Credit Union received, which indicated that the investment account was accurate and contained specific balances.

45. As a result of the Credit Union's reliance on such promises, the Credit Union became insolvent because it was discovered that it did not actually have the investment amounts it was led to believe existed for its member investors. As a result of the Credit Union's insolvency, member investors in the Credit Union have been paid $9.7 million from the NCUSIF to date for their insured investments.

46. Accordingly, as a result of such payments for insured investments caused by Defendant's negligence, the Liquidating Agent has become liable to the NCUSIF for all amounts paid out to the member investors, and has therefore been damaged. The Liquidating Agent also remains potentially exposed to liability for substantial additional sums stemming

from claims for the uninsured investments of member investors who may have claims against the insolvent estate.

47. It was reasonably foreseeable that the Credit Union would make assurances to its member investors that their accounts contained specific balances based on the falsified investment account statements that the Credit Union received, that the Credit Union would be responsible for those amounts, that the Liquidating Agent would be liable to the member investors for their insured account balances when the Credit Union became insolvent, that the NCUSIF would have to pay out such insured account balances to member investors, and that the Liquidating Agent would ultimately be indebted to the NCUSIF for the amounts paid out by the NCUSIF.

## COUNT III – BREACH OF IMPLIED CONTRACT

48. The Liquidating Agent incorporates by reference the allegations previously set forth in this Complaint as if set forth fully herein.

49. By and through its actions and the actions of its agent, A.G. Edwards agreed to open an investment account on behalf of the Credit Union.

50. By and through its actions and the actions of its agent, A.G. Edwards agreed to manage and invest the Credit Union's assets for the benefit of the Credit Union.

51. As a result of the actions by A.G. Edwards and its agent, Mr. Rachleff, the Credit Union opened the account and deposited substantial sums into an account it believed it owned, and which it expected to grow.

52. From April 1988 through July 2008, A.G. Edwards accepted and cashed checks issued by the Credit Union deposited into account ███████████, and subsequently account ███████████.

53.	As such, and because A.G. Edwards and its agent, Mr. Rachleff, provided monthly investment account statements on A.G. Edwards' letterhead to the Credit Union, A.G. Edwards, and subsequently Wachovia, agreed to maintain and invest the Credit Union's assets.

54.	A.G. Edwards breached its implied agreement with the Credit Union by not opening an account on behalf of the Credit Union, and by not maintaining and investing the Credit Union's assets for the benefit of the Credit Union.

55.	As a result of A.G. Edwards' breach, the Credit Union became insolvent and was damaged because it was discovered that it did not actually have the investment amounts it was led to believe existed for its member investors. The Liquidating Agent, as successor to all the rights and privileges of the Credit Union pursuant to 12 U.S.C. § 1787(b)(2), thereby brings this suit for damages based on A.G. Edwards' breach.

## COUNT IV – NEGLIGENT MISREPRESENTATION

56.	The Liquidating Agent incorporates by reference the allegations previously set forth in this Complaint as if set forth fully herein.

57.	A.G. Edwards negligently misrepresented to the Credit Union that it was the account holder of account ▇▇▇▇▇▇ and subsequently account ▇▇▇▇▇▇

58.	A.G. Edwards and its agent supplied false information by providing the Credit Union with falsified monthly investment account statements, and by informing the Credit Union that an account would be opened on its behalf at A.G. Edwards.

59.	A.G. Edwards failed to exercise reasonable care in ensuring that the Credit Union did not receive the falsified investment account statements that were sent from A.G. Edwards and which were printed on A.G. Edwards letterhead.

60. A.G. Edwards failed to exercise reasonable care in ensuring that its agent would not provide such false information when opening and maintaining accounts.

61. A.G. Edwards' agent supplied the falsified investment account statements in order to induce the Credit Union to make deposits into the account.

62. As a result of the aforesaid, the Credit Union justifiably submitted moneys to open an account at A.G. Edwards, and subsequently continued to make deposits into the account to its detriment.

63. The Credit Union was thereby damaged, as none of the investments remained in its name, leading to its liquidation because it was discovered that it did not actually have the investment amounts it was led to believe existed for its member investors. The Liquidating Agent, as successor to all the rights and privileges of the Credit Union pursuant to 12 U.S.C. § 1787(b)(2), thereby brings this suit for damages.

## COUNT V – CONVERSION

64. The Liquidating Agent incorporates by reference the allegations previously set forth in this Complaint as if set forth fully herein.

65. All amounts provided to Defendant by the Credit Union for investment into account ▮▮▮ and subsequently account ▮▮▮ belonged to the Credit Union.

66. Because all such amounts provided by the Credit Union were cashed and deposited into an account in which the Credit Union was not the named owner, A.G. Edwards permanently deprived the Credit Union of all such moneys.

67. Upon information and belief, A.G. Edwards wrongfully allocated all amounts deposited by the Credit Union to the Elmore Shoe Company without permission or authority.

68. The Credit Union was thereby deprived of its assets and further deprived of the ability to invest such assets over two decades. The Liquidating Agent, as successor to all the rights and privileges of the Credit Union pursuant to 12 U.S.C. § 1787(b)(2), thereby brings this suit for damages based on A.G. Edwards' conversion of the Credit Union's assets.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests judgment against Defendant for:

1. An award of monetary damages, the precise amount of such damages to be determined upon a full trial on the merits;

2. An award of reasonable attorneys' fees, costs and disbursements for this action; and

3. Such other and further relief to which Plaintiff may be entitled.

## JURY TRIAL DEMAND

The Liquidating Agent hereby requests a jury trial on all questions of fact raised in this Complaint.

PLAINTIFF - NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as liquidating
agent for the NEW LONDON SECURITY
FEDERAL CREDIT UNION,

By /s/ Robert E. Kaelin

Robert E. Kaelin - ct11631
rkaelin@murthalaw.com
Ka Fei Wong - ct28130
kwong@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: 860.240.6000
Facsimile: 860.240.6150
Its Attorneys