UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION, as liquidating agent for the NEW LONDON SECURITY FEDERAL CREDIT UNION, | : : : : : |
|     Plaintiff, | : |
| v. | : |
| | : |
| WELLS FARGO ADVISORS, LLC, as successor in interest to WACHOVIA SECURITIES, successor in interest to A.G. EDWARDS & SONS, INC. | :    No. 3:10-cv-00143-WWE : : : |
|     Defendant. | : |
| | : |
| WELLS FARGO ADVISORS, LLC, | : |
|     Third-Party Plaintiff, | : |
| v. | : |
| | : |
| HERBERT LINDER, MARTIN YAVENER, REUBEN LEVIN, and MARTIN LAZURUS et al. | : : : |
|     Third-Party Defendants. | : |

## MEMORANDUM OF DECISION ON THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this action, defendant and third-party plaintiff, Wells Fargo Advisors, LLC, has filed a third-party complaint against third-party defendants Herbert Linder, Martin Yavener, Reuben Levin and Martin Lazurus alleging negligence and seeking contribution. Third-party defendants have filed a motion for summary judgment. For the following reasons the motion for summary judgment will be granted.

## BACKGROUND

This action was initially commenced with the filing of a complaint by the National Credit Union Administration ("NCUA") Board as liquidating agent for the New London Security

1

Federal Credit Union ("Credit Union" or "New London") asserting claims against Wells Fargo Advisors, LLC, as successor-in-interest to Wachovia Securities, successor-in-interest to A.G. Edwards & Sons, Inc. for negligent supervision, promissory estoppel, breach of implied contract, negligent misrepresentation and conversion.

Third-party defendant Rachleff worked as an investment broker and financial advisor for A.G. Edwards and its successor firms from February 1988 until his suicide on July 28, 2008. Rachleff was the branch manager of A.G. Edwards' branch office in Waterford, Connecticut. In March 1988, Rachleff represented to the Credit Union that he was opening an account at A.G. Edwards with Credit Union funds on behalf of the Credit Union. On April 29, he represented to the Credit Union that its investment was valued at over $4,832,000.00. From time to time, Rachleff provided the Credit Union with investment account statements, trade confirmations and other account verification documentation. All investment account statements received by the Credit Union from A.G. Edwards were on brokerage statements with A.G. Edwards' letterhead, contained the appropriate account number and listed the Credit Union as the named-account owner.

Between April 1988 and June 2008, the Credit Union received monthly account statements detailing its investments, including the value of such investments and the details of its investment portfolio. During that time, the Credit Union received trade confirmations on A.G. Edwards' letterhead detailing transactions taken on its behalf. The Credit Union deposited checks totaling over $1.755 million into the account between April 1988 and July 2003. These checks bore the Credit Union's name, were made payable to A.G. Edwards and referenced the appropriate account. The checks were deposited into and were credited to the account that was

2

supposed to be the Credit Union's at A.G. Edwards.

In April or May 2005, the Credit Union received an investment account statement informing it that its account was being assigned a new account number as a result of a technology upgrade. The June 2008 account statement showed a total investment balance of over $11.818 million.

In July 2008, it was discovered that the investment account in the name of the Credit Union was non-existent at Wachovia, successor to A.G. Edwards. The missing investment assets caused the Credit Union to become insolvent, and on July 28, 2009, the NCUA Board had to place the Credit Union into involuntary liquidation.

Unbeknownst to the Credit Union, Rachleff had not opened any account at A.G. Edwards under the Credit Union's name. Instead, Rachleff had opened the account under the name of the Elmore Shoe Company, which was a defunct company formerly owned by Rachleff's wife and family.

During the relevant time, Rachleff had relatives and acquaintances sign the A.G. Edwards forms and documents relating to the Credit Union's account; used misleading physical addresses for the account; used a misleading tax identification number for the account; used the name "Elmore Shoe Company" as the named account holder; and used Credit Union funds in the Elmore Shoe Company account without the authority of the Credit Union. Rachleff had complete control over the account and subsequent accounts and performed transactions on the account.

**Allegations of the Third-Party Complaint**

Herb Linder was the Credit Union's Chairman of the Board since at least 2002 and the last-acting Chairman. Martin Yavener was the Credit Union's Vice Chairman of the Board since at least 2002 and the last-acting Vice Chairman. Hinda Kimmel was the Treasurer and a member of the Board since 2002 and the last-acting Treasurer. Reuben "Rip" Levin and Martin Lazarus were members of the Board since at least 2002 and were among the last-acting Board Members. Beller Shepatin & Co. and Ed Lorah & Associates were among Credit Union's outside auditing firms. Janice E. Brady was the Credit Union's last Manager. She was the successor to Mary Lou Richards. The Estate of Edwin Rachleff has been in probate since August 7, 2008.

Linder, Yavener, Kimmel, Levin and Lazarus (collectively, the "Board") and Brady were charged with the responsibility to maintain policies and procedures, to oversee New London's operation in accordance with those policies and procedures, to ensure that member funds were adequately handled and safeguarded, to audit New London's operations and finances to protect member funds and to remedy any deficiencies when found so as to prevent the compromise of member funds.

The Board's and Brady's actions were documented in a report issued by the NCUA's Office of Inspector General in October 2009, entitled "Material Loss Review of New London Security Federal Credit Union" ("Review"). The Review squarely faulted the Board and Brady for failing to follow procedures to operate a federally chartered credit union, for allowing Rachleff "run of the house" in terms of choosing, handling and overseeing New London's investment activity, for ignoring clear and specific warnings about risk, for failing to remedy deficiencies noted in previous audits and for other negligent conduct.

4

Defendant Wells Fargo, LLC has brought this third-party action against third-party defendants Herbert Linder, Martin Yavener, Reuben Levin and Martin Lazurus alleging negligence and seeking contribution. These third-party defendants have moved for summary judgment.

## **DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

5

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Impleader and Contribution**

Federal Rule of Civil Procedure 14(a) requires that a third-party complaint be predicated on secondary liability and not based purely on direct liability from the third-party defendants to the plaintiff: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

Rule 14(a) provides a procedural mechanism for impleader. It does not create any substantive cause of action. Telecom Int'l Am., Ltd. v. AT&T Corp., 1999 U.S. Dist. LEXIS 15065, *13 (S.D.N.Y. Sept. 29, 1999). Whether a third-party claim is predicated upon express or implied indemnity, contribution, breach of warranty, subrogation or some other theory, impleader is improper if there is no right to relief under the substantive law.

Prior to 1986, Connecticut adhered to the common-law doctrine of joint and several liability with no right of contribution among joint tortfeasors. Donner v. Kearse, 234 Conn. 660, 666 (1995). With the enactment of tort reform legislation in 1986, however, "[t]he legislature sought to remedy the growing concerns regarding the cost and availability of liability insurance by abrogating the doctrine of joint and several liability for negligent tortfeasors and thus

imposing limitations on a negligent defendant's obligation to pay damages." Bhinder v. Sun Co., 246 Conn. 223, 232 (1998). Connecticut General Statutes Section 52-572h, pertaining to negligence actions, provides for a division of responsibility amongst joint tortfeasors in some circumstances:

> (c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

The apportionment principles of § 52-572h do not apply where the purported apportionment complaint rests on any basis other than negligence. More importantly, General Statutes Section 52-572h applies only in those cases where the underlying complaint alleges negligence that results in injury, death or damage to property. Town of New Canaan v. Brooks Laboratories, Inc., 2006 WL 2578772, *4 (Conn. Super. 2006). "Damage to property" does not include purely commercial or economic losses, unaccompanied by damages to or loss of the use of some tangible property. Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 581 (1995).

In the present action, all alleged losses are purely commercial in nature. Therefore, contribution is not available to third-party plaintiff pursuant to Connecticut General Statutes Section 52-572h. Third-party plaintiff has not cited any other basis for its third-party complaint that "sounds in contribution."[1] Furthermore, contribution refers to the apportioning of fault while indemnity refers to total compensation from another party. Here, third-party plaintiff seeks from

---

[1] Third-party plaintiff did not cite any substantive basis for its contribution claims.

third-party defendants "the amount awarded to plaintiff in the event [plaintiff] is successful in its complaint."

It is well established that Federal Rule of Civil Procedure 14 is procedural and that the substantive rights of a third-party plaintiff must be determined by applying the appropriate state law. Third party-plaintiff has failed to sufficiently demonstrate a right to indemnity or contribution under Connecticut law. Accordingly, third-party defendant's motion for summary judgment will be granted.

## **CONCLUSION**

For the foregoing reasons, third-party defendants' motion for summary judgment [#134] is GRANTED.

DATED this 21st day of November, 2011 at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE